**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Kaufman, | ) | No. CV-12-459-PHX-LOA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Steven H. Jesser and Paula M. Jesser, | ) | |
| husband and wife, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This attorney malpractice action arises on Defendants Steven and Paula Jesser's (collectively "Defendants" or "Jesser") Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted. (Docs. 20-21) Defendants raise four separate grounds for dismissal of this lawsuit pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or Arizona Revised Statute ("A.R.S.") § 12-2602: 1) Plaintiff has certified that no liability expert is needed in this case, but Arizona law requires a standard-of-care expert in this professional negligence action; 2) the Complaint was untimely filed beyond Arizona's two-year statute of limitations, A.R.S. § 12-542, for negligence actions; 3) Plaintiff cannot prove that Jesser was the proximate cause of Plaintiff's alleged damages; and 4) Plaintiff cannot prove any allowable damages. (Doc. 21, ¶¶ 4, 7, 11, 14)  Because oral argument would not aid the Court's decisional process and the briefing is adequate, Defendants' request for oral argument will be denied. *Mahon v. Credit Bur. of Placer County, Inc*., 171 F.3d 1197, 1200 (9th Cir. 1999).

After considering the briefing and applicable law, the Court will deny Defendants' motion, order Plaintiff to secure a standard-of-care expert witness, provide a preliminary expert opinion affidavit to Defendants consistent with A.R.S. § 12-2602(b) within 30 days, and stay this action pending Plaintiff's filing a notice of compliance with this Order.

**I. Background**

This is a professional negligence action against a trial attorney, arising out of Plaintiff David Kaufman's ("Kaufman") unsuccessful veterinary malpractice lawsuit against William Langhofer, D.V.M., and the Scottsdale Veterinary Clinic over the death of "Salty," Kaufman's scarlet macaw. *See Kaufman v. Langhofer*, 223 Ariz. 249, 222 P.3d 272 (Ariz. Ct. App. 2009) ("*Kaufman I*"). In a 2007 action in the Maricopa County Superior Court, Kaufman, represented by attorney Steven H. Jesser, asserted claims of professional negligence, wrongful death, negligent misrepresentation, and destruction of Kaufman's personal property, Salty. A jury allocated 30 percent fault to the veterinarian and 70 percent fault to Kaufman, but awarded Kaufman no damages. *Id*. Represented by a different attorney,[1] Kaufman appealed. In a published opinion, the Arizona Court of Appeals affirmed, holding that, under Arizona law, a pet owner is not entitled to recover damages for the emotional distress and loss of companionship over the death of his or her pet. *Id*., 223 Ariz. at 250, 222 P.3d at 273.[2] According to undisputed information in a public record provided by Kaufman, Kaufman's petition for review to the Arizona Supreme Court was denied on May 21, 2010. (Doc. 25-1 at 1)

---

[1] Defendants represent that "[d]uring the trial of the underlying matter, the Plaintiff asked [Jesser] to step aside and allowed Attorney Blake Gunn to try the end of the case." (Doc. 21, ¶ 13 at 5)  Attorney Blake Gunn also represented Kaufman in the appeal.

[2] In a separate memorandum decision, *Kaufman v. Langhofer*, 2009 WL 4980337 (Ariz. Ct. App. Dec. 22, 2009), filed simultaneously with the published opinion, the appellate court addressed the other issues Kaufman unsuccessfully raised on appeal. *See Kaufman*, 223 Ariz. at 250 n. 1, 222 P.3d at 273 n.1.

According to the published appellate opinion, Kaufman purchased Salty in late 1996. *Id*. It was uncontested at trial that Salty was intelligent, affectionate, and playful. Kaufman considered Salty his companion. Salty accompanied Kaufman to work, engaged with customers in Kaufman's business, and participated in family holidays. *Id*. On May 1, 2005, a bird breeder diagnosed Salty with a cloacal prolapse.[3] *Id*. Kaufman brought Salty to Dr. Langhofer on May 5, 2005. After multiple consultations, Dr. Langhofer performed two operations, which cured Salty's cloacal prolapse, but left Salty with a uterine prolapse. Salty never fully recovered from the second operation, began to suffer respiratory distress, and died on June 21, 2005. *Id*.

Kaufman filed this legal malpractice suit ("*Kaufman II*") against his former attorney in the Maricopa County Superior Court, State of Arizona, on December 21, 2011. (Docs. 1, ¶ 1 at 1; 1-1 at 3)  Defendants were served on February 7, 2012, and removed this action to this District Court on March 5, 2012. (*Id*.)  Before answering the Complaint, Defendants filed the pending motion.

**A. The Allegations**

The Complaint alleges multiple failures by Jesser, an Illinois-based attorney admitted to practice law in numerous state courts, including Arizona, to meet the applicable standard of care before and during the trial of *Kaufman I*. (Doc. 1-1 at 3-16) Kaufman alleges that Jesser "held himself out to the public as an experienced provider of specialized law pertaining to animal litigation."  (*Id.*, ¶ 12 at 5)  The Complaint in this lawsuit, *Kaufman II*, asserts, *inter alia*, that Jesser:

> 1. "failed to prepare a . . . Rule 26.1 Disclosure Statement, and [Jesser] did not insist that [defendants] provide him one[;]"[4]

---

[3] "A condition by which an internal sac, used primarily for storing bodily waste, is forced out of the body." *Kaufman I*, 223 Ariz. at 250 n. 2, 222 P.3d at 273 n. 2.

[4] Under Rule 26.1, Ariz.R.Civ.P., litigants in a civil case have a duty to promptly disclose, among others, the following:

2. failed "to list many of [Kaufman's] exhibits and witnesses in a joint pretrial statement . . . result[ing] in the exclusion of several of [Kaufman's] witnesses and many exhibits [at trial;]"

3. failed to instruct Kaufman to obtain clean copies of exhibits to introduce in

---

(1) 1) The factual basis of the claim or defense. In the event of multiple claims or defenses, the factual basis for each claim or defense.

(2) The legal theory upon which each claim or defense is based including, where necessary for a reasonable understanding of the claim or defense, citations of pertinent legal or case authorities.

(3) The names, addresses, and telephone numbers of any witnesses whom the disclosing party expects to call at trial with a fair description of the substance of each witness' expected testimony.

(4) The names and addresses of all persons whom the party believes may have knowledge or information relevant to the events, transactions, or occurrences that gave rise to the action, and the nature of the knowledge or information each such individual is believed to possess.

(5) The names and addresses of all persons who have given statements, whether written or recorded, signed or unsigned, and the custodian of the copies of those statements.

(6) The name and address of each person whom the disclosing party expects to call as an expert witness at trial, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, a summary of the grounds for each opinion, the qualifications of the witness and the name and address of the custodian of copies of any reports prepared by the expert.

*          *          *          *          *          *

Rule 26.1, Ariz.R.Civ.P. A party who fails to timely disclose information required by Rule 26.1, unless such failure is harmless, is subject to sanctions, including striking the pleadings and entry of a default judgment. Rule 37(c)(1), Ariz.R.Civ.P.

evidence at trial, resulting in "[m]any of [Kaufman's] key exhibits [being] excluded at trial because the documents contained [Kaufman's] handwritten notes."

4. "failed to submit any proposed jury instructions relating to recovery of veterinary fees [in excess of $10,000] [and submitted] no instruction on damages of any kind[;]"[5]

5. failed to "request that the court reform or amend the jury verdict to include nominal damages" "[a]fter the jury returned a verdict in favor of [Kaufman] but awarded him zero dollars in damages[;]"

6. "was aware that Dr. Vaughn [Kaufman's veterinary expert witness] was charging exorbitant fees [over $107,000] to [Kaufman] for services that were not provided, yet [Jesser] did nothing to intervene with Dr. Vaughn or suggest that another expert be retained[;]"

7. failed to "require [defendants] to answer interrogatories, even after the trial court granted [Kaufman's] motion to compel [defendants'] response[;] and

8. failed to "request[] that the trial date be set far enough in the future to conclude all necessary discovery."

(*Id.*, ¶¶ 13-20, 29, 31, 42)  According to Kaufman, the end result in *Kaufman I* was the jury found for Kaufman, awarded him no damages, the trial court awarded defendants $6,500 in costs as the prevailing party, Kaufman then lost on appeal and defendants were again awarded their costs as the prevailing party. (*Id.*, ¶¶ 21-23; doc. 25 at 4) Kaufman claims he "spent substantial amounts to retain what he understood to be experienced and highly competent council (sic), only to discover that he had purchased representation riddled with numerous errors committed by Mr. Jesser." (Doc. 25 at 4)

    The Complaint alleges that, as a direct and proximate result of Jesser's "multiple breaches of his duty owed" to Kaufman, Kaufman "sustained various damages, including, but not limited to, the failure to recover (a) amounts paid for veterinary bills, (b) the value

---

[5] The Arizona appellate court refused to address whether Kaufman was entitled to recover damages under a value-to-owner theory or whether, under this theory, a pet owner may recover for the sentimental value of his or her pet because "[K]aufman did not identify that theory as an issue to be tried in the parties' joint pretrial statement and, indeed, never requested the court to instruct the jury on that theory." *Kaufman*, 223 Ariz. at 254, 222 P.3d at 277. "Further, although Kaufman preserved his objection to the court's pretrial dismissal of his emotional distress damage claims, he raised no other objection to the court's instruction limiting his damages to Salty's fair market value. Having failed to raise the value to owner damage theory at trial, Kaufman may not raise it here." *Id.* (Doc. 1-1, ¶ 29 at 9)

1   [Kaufman] placed on Salty, . . . (c) costs incurred in the action . . . [d] payment of

2   [defendant's] costs, [e] payment of an attorney to appeal the adverse decisions caused by

3   [Jesser's] actions and/or inactions, [f] payment of Dr. Vaughn's excessive expert fees, and

4   [g] payment of [Jesser's] attorney's fees of over $120,000.00 for inadequate representation."

5   (Doc. 1-1, ¶¶ 48-49 at 13-14)

6   **II. Jurisdiction**

7           On March 5, 2012, Defendants removed this action on the basis that jurisdiction exists

8   under 28 U.S.C. § 1332 because the parties' citizenship is completely diverse and the amount

9   in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. (Doc. 1, ¶¶ 2-

10  4) The Notice of Removal alleges Kauffman is a citizen of the State of Arizona and

11  Defendants are citizens of the State of Illinois. (*Id.*, ¶ 2)   All parties have consented in

12  writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 13-15)

13          **A. Choice of Law**

14          "[F]ederal courts sitting in diversity jurisdiction apply state substantive law and

15  federal procedural law." *Enterprise Bank & Trust v. Vintage Ranch Inv*., LLC, * 2 (D. Ariz.

16  April 16, 2012) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)

17  (internal quotation marks omitted)). Because jurisdiction in this case is based on diversity,

18  Arizona substantive law applies to this action. Nevertheless, the Federal Rules of Civil

19  Procedure govern the procedural aspects of this action after removal. Rule 81(c)(1),

20  Fed.R.Civ.P. ("These rules apply to a civil action after it is removed from a state court.").

21          **B. Substantive Law**

22          Arizona substantive law is one that gives rise to "[state-created] rights and obligations

23  in such a way that its application in federal court is required." *Amor v. Arizona*, 2010 WL

24  960379, * 6 (D. Ariz. March 15, 2010) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*., 356

25  U.S. 525, 535 (1958)). A law is substantive if it would "significantly affect the result of a

26  litigation for a federal court to disregard a law of a State that would be controlling in an

27  action upon the same claim by the same parties in a State court." *Hanna v. Plumer*, 380 U.S.

28  460, 466 (1965). The outcome-determinative test must be read with "reference to the twin

aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468 (referring to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The proper inquiry is "[w]hether the federal policy . . . should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court." *Amor*, 2010 WL 960379, * 6 (quoting *Byrd*, 356 U.S. at 538). "[B]ecause the Federal Rules [of Civil Procedure] are not sufficiently broad to cover th[is] issue before this Court, and in furtherance of the twin aims of *Erie*," the district court in *Amor* found A.R.S. § 12-2603 was substantive and applicable to a medical negligence action brought in the District Court of Arizona pursuant to the Federal Tort Claims Act. *Id*. at * 9.

**III. Standard of Review**

   **A. Failure to State a Claim**

   A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a). Dismissal of a complaint under Rule 12(b)(6) may be granted for two reasons: 1) failure to allege a cognizable legal theory, or 2) the facts alleged are insufficient to state a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

   To survive a Rule 12(b)(6) motion in federal courts, the complaint must not only meet the requirements of Rule 8(a)(2), but it must also provide a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).[6]

   Although a complaint challenged for failure to state a claim does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

   [6] The Arizona Supreme Court has rejected the *Twombly* and *Iqbal* standard for determining whether a complaint states a claim upon which relief can be granted. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 189 P.3d 344 (Ariz. 2008); *see also Wapniarski v. Allstate Ins. Co.*, 2010 WL 2534167, * 1 n. 1 (D. Ariz. June 18, 2010).

will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise plaintiff's right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citation omitted)).

Federal Rule of Civil Procedure 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id*. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding whether to grant a motion to dismiss, a district court must accept all "well-pleaded factual allegations in the complaint as true, [but courts] are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

With a few exceptions, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d), Fed.R.Civ.P. Pursuant to Fed.R.Evid. 201, a district court may, however,

1    properly take judicial notice of matters of public record without converting a motion to

2    dismiss into a motion for summary judgment, as long as the facts noticed are not subject to

3    reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation

4    omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). Pleadings

5    and orders in other actions are matters of public record; hence, they are properly the subject

6    of judicial notice. *See e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.

7    6 (9th Cir. 2006) (taking judicial notice, as a matter of public record, "pleadings, memoranda,

8    expert reports, etc., from [earlier] litigation[,]" which were thus "readily verifiable"); *Kourtis

9    v. Cameron*, 419 F.3d 989, 994 n. 2 (9th Cir. 2005) (citation omitted), *overruled on other

10   grounds*, *Taylor v. Sturgell*, 553 U.S. 880 (2008); *Williams v. Secretary, Dept. of

11   Corrections*, 2009 WL 2147491, * 1 (M.D. Fla. July 16, 2009) (taking judicial notice of the

12   date an appellate mandate was issued). "On a Rule 12(b)(6) motion to dismiss, when a court

13   takes judicial notice of another court's opinion, it may do so not for the truth of the facts

14   recited therein, but for the existence of the opinion, which is not subject to reasonable dispute

15   over its authenticity." *Lee*, 250 F.3d at 690 (internal quotation marks and citation omitted).

16          **Discussion**

17          The Court finds that Kauffman's Complaint alleges plausible claims of professional

18   negligence against attorney Jesser committed before and during the trial in *Kauffman I*.

19   Because the Court must accept all "well-pleaded factual allegations in the complaint as true,"

20   *Iqbal*, 556 U.S. at 678, the Complaint's factual allegations are sufficiently specific to show

21   Kauffman's right to relief is plausible and "above the speculative level." *Twombly*, 550 U.S.

22   at 555. Far from relying on "mere labels, conclusions or a formulaic recitation of the

23   elements of his causes of action," *id*., the Complaint details Jesser's alleged errors in

24   judgment and omissions that, if proven by appropriate evidence, fell below the standard of

25   care commonly exercised by trial attorneys in the Phoenix community, causing Kauffman's

26   damages. For example, the Complaint alleges Jesser failed to file, and make the court aware

27   of defendant's failure to file, a disclosure statement, resulting in the exclusion of Kauffman's

28   exhibits and witnesses at trial; failed to identify many of Kaufman's exhibits and witnesses

in a joint pretrial statement, resulting in their exclusion at trial; failed to offer in evidence trial exhibits without handwritten notes ("clean") written on them, resulting in their exclusion from the jury; failed to submit proposed jury instructions or a damage instruction addressing all damages to which an aggrieved pet owner may be entitled to recover, resulting in the waiver of certain damage arguments on appeal; and failed to make the court aware of defendant's continued failure to answer interrogatories, even after the trial court granted Kaufman's motion to compel such answers. (Doc. 1-1 at 3-16) Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted is without merit and denied.

**IV. Governing Law**

**A. Attorney Negligence Law**

"In Arizona, 'an attorney must act for his client in a reasonably careful and skillful manner in light of his special professional knowledge.'" *Cecala v. Newman*, 532 F.Supp.2d 1118, 1134 (D. Ariz. 2007) (quoting *Martin v. Burns*, 102 Ariz. 341, 343, 429 P.2d 660, 662 (Ariz. 1967)). "Although held to standards of care and loyalty, lawyers are not guarantors of successful litigation outcomes." *Id.* (citing *Talbot v. Schroeder*, 13 Ariz.App. 230, 231, 475 P.2d 520, 521 (Ariz. Ct. App. 1970). "Malpractice liability attaches only when the breach of the applicable standard of care or conduct is the cause in fact and legal cause of a cognizable injury to the client." *Id.*

A plaintiff asserting a malpractice claim against an attorney under Arizona law must establish four elements to make out a *prima facie* case: "(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) breach of that duty, (3) that such negligence was the actual and proximate cause of resulting injury, and (4) the nature and extent of damages." *McClure Enters. Inc. v. General Ins. Co. of Am.*, 2009 WL 73677, * 3 (D. Ariz. Jan. 9, 2009) (citing, among others, *Glaze v. Larsen*, 207 Ariz. 26, 29, 83 P.3d 26, 29 (Ariz. 2004); *Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (Ariz. Ct. App. 1986)). "Expert testimony is generally required 'to establish the

standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard.'" *Wise v. Polis*, 2008 WL 4927376 (Ariz. Ct. App. 2008) (quoting *Baird v. Pace*, 156 Ariz. 418, 420, 752 P.2d 507, 509 (Ariz. Ct. App. 1987)). A trial for legal malpractice regarding errors occurring before or during a first trial is commonly referred to as a "case within the case." *Phillips*, 152 Ariz. at 418, 733 P.2d at 303. Where, however, the attorney's negligence "is so grossly apparent that a lay person would have no difficulty recognizing it," expert testimony is not required. *Asphalt Eng'rs., Inc. v. Galusha*, 160 Ariz. 134, 135-36, 770 P.2d 1180, 1181-82 (Ariz. Ct. App. 1989). For example, expert testimony on the standard of care is generally not required where the plaintiff alleges breach of contract rather than conduct that fell below the standard of care or where an accused attorney acknowledges that his conduct constituted malpractice. *Id.*, 160 Ariz. at 136, 770 P.2d at 1182.

"When the malpractice sounds in negligence, 'the plaintiff must prove that *but for* the attorney's negligence, [the plaintiff] would have been successful in the prosecution . . . of the original suit.'" *Cecala*, 532 F.Supp.2d at 1136 (quoting *Phillips*, 152 Ariz. at 418, 733 P.2d at 303) (emphasis added); *see also McClure Enters. Inc*., 2009 WL 73677, * 17 ("While [the attorney] may have admitted that his shortcomings caused damage to [the plaintiff], [the plaintiff] must still prove that but for [the attorney's] negligence, [the plaintiff] would have succeeded in the original suit.") (citation omitted). "Conversely, 'but-for' causation does not exist if the event would have occurred without the lawyer's conduct." *Cecala*, 532 F.Supp.2d at 1136 (quoting 1 Ronald E. Mallen & Jeffery M. Smith, *Legal Malpractice* § 8:5 at 984 (2007)). "Where the attorney's error was an omission, the inquiry is, assuming the attorney performed the act, would the plaintiff have achieved the claimed benefit?" *Id*. (citation omitted). This case raises this precise issue.

### Discussion

As set forth above, Arizona's substantive law applies to this case. Here, the parties mistakenly equate Arizona's statutory requirements for expert testimony in suits against licensed professionals, A.R.S. §§ 12-2601 to 2605, as State rules on "discovery procedures,"

doc. 26 at 2,  or "disclosure-based discovery", doc. 25 at 1, when, in fact, Arizona's statutory

expert disclosure scheme is substantive Arizona law. In *Seisinger v. Siebel*, 220 Ariz. 85, 95,

203 P.3d 483, 493 (Ariz. 2009), the Arizona Supreme Court found that Arizona's statutory

requirements for the use of liability experts, such as, § 12–2604(A), is "substantive in much

the same sense" as is its codification of the common law for medical malpractice actions in

A.R.S. § 12–563.

> [B]ecause § 12–563 defines the elements of a cause of action, it is *plainly substantive.*
> *Section 12–2604(A) is substantive in much the same sense*. It "regulates rights,"
> [citation omitted] by modifying the common law to increase a plaintiff's burden of
> production with respect to a statutory element of the tort, departure from the standard
> of care. Before the enactment of § 12–2604(A), [a plaintiff] could satisfy that burden
> by presenting the testimony of [an expert witness], assuming he qualifies as an expert
> under Rule 702. After § 12–2604(A) became effective, the same evidence is not
> sufficient, as a matter of law, to avoid summary judgment. The statute thus did not
> merely alter court procedures, but rather changed the substantive law as to what a
> plaintiff must prove in medical malpractice actions. [citation omitted] *Legg*, 286 F.3d
> at 290 ("State witness competency rules are often intimately intertwined with a state
> substantive rule. This is especially true with medical malpractice statutes, because
> expert testimony is usually required to establish the standard of care.").

220 Ariz. at 95, 203 P.3d at 493 (emphasis added); *see also M.M. v. Yuma County*, 2011 WL

5519905, * 2 (D. Ariz. November 14, 2011) (A.R.S. § 12–2604(A)(3) "is substantive, not

procedural.") (citing *Seisinger*, 220 Ariz. at 95, 203 P.3d at 493-94). Section 12-2604(A) sets

forth the minimum qualifications for an expert to provide testimony on the appropriate

standard of care in medical malpractice cases and § 12-2603, like § 12-2602, requires a

person bringing a claim against a healthcare professional to file a preliminary expert opinion

affidavit, but it also permits the party "a reasonable time to cure any affidavit" if the affidavit

is insufficient. *See* A.R.S. §§ 12-2603(F), -2602(E).[7]  In *Jilly v. Rayes*, 221 Ariz. 40, 42, 209

P.3d 176, 178 (Ariz. Ct. App. 2009), the Arizona Court of Appeals described A.R.S. §

12-2602  as a "similar statute" to its companion statutes, A.R.S. §§ 12-2603 and 12-2604,

---

[7]   A.R.S. § 12–2602(E) mandates that if the trial court determines that expert
testimony is required in a suit against a non-healthcare professional, the court must give the
plaintiff an opportunity to comply with the statute.

which deal with liability experts in medical negligence actions.

As it does here, in *Mann v. United States*, 2012 WL 273690, * 7-8 (D. Ariz. January 31, 2012), the undersigned Magistrate Judge adopted the view that Arizona's statutory expert disclosure scheme against a healthcare professional is substantive Arizona law. *Mann* was a medical negligence action brought pursuant to the Federal Tort Claims Act, which, with minor exceptions, is governed in accordance with the law of the place where the act or omission occurred. *See Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005); *Gil v. Reed*, 535 F.3d 551, 558 n. 2 (7th Cir. 2008) ("In FTCA cases, state law applies to substantive questions and federal rules govern procedural matters."). In light of the twin aims of *Erie* and  because it "regulates rights," *Seisinger*, 220 Ariz. at 95, 203 P.3d at 493, the Court concludes that A.R.S. § 12-2602 is substantive State law and controlling in this diversity action.

**B. Preliminary Expert Opinion Testimony**

Arizona has enacted statutes concerning malpractice suits against professionals and healthcare providers. *See* A.R.S. §§ 12-2601 to 2605. Amended in 1999 by the Arizona Legislature, A.R.S. § 12-2602 outlines the circumstances requiring a plaintiff to disclose preliminary expert opinion evidence for actions against licensed, non-healthcare professionals, including attorneys. A.R.S. § 12-2602 provides, in relevant part, as follows:

A. If a claim against a licensed professional is asserted in a civil action, the claimant or the claimant's attorney shall certify in a written statement that is filed and served with the claim whether or not expert opinion testimony is necessary to prove the licensed professional's standard of care or liability for the claim.

\*          \*          \*          \*          \*          \*

D. If the claimant or the claimant's attorney certifies that expert testimony is *not* required for its claim and the licensed professional who is defending the claim disputes that certification in good faith, the licensed professional may apply by motion to the court for an order requiring the claimant to obtain and serve a preliminary expert opinion affidavit under this section. In its motion, the licensed professional shall identify the following:

1. The claim for which it believes expert testimony is needed.

2. The prima facie elements of the claim.

3. The legal or factual basis for its contention that expert opinion testimony is required to establish the standard of care or liability for the claim.

E. After considering the motion and any response, the court shall determine whether the claimant shall comply with this section and, if the court deems that compliance is necessary, shall set a date and terms for compliance. The court shall stay all other proceedings and applicable time periods concerning the claim pending the court's ruling on the motion to compel compliance with this section.

F. The court, on its own motion or the motion of the licensed professional, shall dismiss the claim against the licensed professional without prejudice if the claimant fails to file and serve a preliminary expert opinion affidavit after the claimant or the claimant's attorney has certified that an affidavit is necessary or the court has ordered the claimant to file and serve an affidavit.

A.R.S. § 12-2602(A), (D-F) (emphasis added). Unlike § 12-2602's predecessor declared unconstitutional in 1997 because it required a plaintiff to hire an expert witness even when one was not necessary, *Hunter Contracting Co. v. Superior Ct.*, 190 Ariz. 318, 947 P.2d 892 (Az.Ct.App. 1997), the current statute is constitutional and controls the use of standard-of-care experts in an action against an attorney for professional negligence. *Bertleson v. Sacks Tierney, P.A.*, 204 Ariz. 124, 127, 60 P.3d 703, 706 (Ariz. Ct. App. 2002) (finding § 12-2602 constitutional).

Section 12-2602 requires a plaintiff in a non-healthcare, professional negligence action to file a certificate, stating whether or not expert testimony is necessary to support any claim in the complaint. *Id.* In the event of a dispute over whether expert testimony is required on liability, the trial court will make the determination. A.R.S. § 12-2602(E). Importantly, if the trial court concludes that an expert opinion is required to establish the appropriate standard of care and the professional breached that standard, § 2602(F) mandates the court, upon motion or *sua sponte*, to "[d]ismiss the claim against the licensed professional without prejudice if the claimant fails to file and serve a preliminary expert opinion affidavit *after the . . . court has ordered the claimant to file and serve an affidavit*." A.R.S. § 12-2602(F) (emphasis added). Clearly, the statute requires fair notice to a plaintiff and an opportunity to cure ("set a date and terms for compliance") an expert deficiency when a court determines an affidavit is required before dismissal is appropriate. *See Warner v. Southwest Desert Images, LLC*, 218 Ariz. 121, 129, 180 P.3d 986, 994 (Ariz. Ct. App. 2008) (finding trial court abused its discretion in dismissing plaintiff's claims in an action against a licensed professional based on plaintiff's failure to submit a timely expert affidavit to prove the

- 14 -

licensed professional's standard of care without giving plaintiff an opportunity to cure ). "Section 12-2602(E) provides that when a trial court determines an affidavit is required, it must 'set a date and terms for compliance.' The court did not do so here." *Id.*

Most of the Arizona and District of Arizona cases which discuss Arizona's statutory scheme for using standard-of-care witnesses are suits against doctors and other healthcare professionals. *See e.g., Seisinger*, 220 Ariz. 85, 203 P.3d 483; *Baker v. University Physicians Healthcare*, 228 Ariz. 587, 269 P.3d 1211 (Ariz. Ct. App. 2012); *Hardy v. Catholic Healthcare West*, 2010 WL 5059602 (Ariz. Ct. App. December 7, 2010); *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 183 P.3d 1285 (Ariz. Ct. App. 2008); *Estate of Cook ex rel. Weniger v. Scottsdale Residential Care*, 2008 WL 4667316 (Ariz. Ct. App. October 16, 2008); *Amor*, 2010 WL 960379; *Wright v. United States*, 2008 WL 820557 (D. Ariz. March 25, 2008); *Scoins v. Goddard*, 2007 WL 1063168 (D. Ariz. April 6, 2007); *Moreland v. Barrette*, 2006 WL 3147651 (D. Ariz. October 31, 2006); *Byrd v. Aetna Life Ins. Co.*, 2006 WL 2228829 (D. Ariz. August 1, 2006). There are far fewer reported cases of malpractice actions against attorneys since 1999 when § 12-2602 was amended. *See Dommisse v. Jaburg & Wilk, P.C.*, 2009 WL 296162 (Ariz. Ct. App. February 6, 2009); *Sakthiveil v. Casler*, 2008 WL 5244925 (Ariz. Ct. App. December 16, 2008); *Club Vista Fin. Servs., LLC v. Maslon Edelman Borman & Brand, LLP*, 2010 WL 2231926 (D. Ariz. June 2, 2010); *Cecala v. Newman*, 532 F.Supp.2d 1118 (D. Ariz. 2007). One post-1999 case provides some meaningful guidance on § 2602's requirements in a malpractice action against an attorney.

In *Wise*, a former client sued his divorce attorney, contending that expert opinion was not required to prove his former attorney's representation fell below the professional standard of care. *Wise*, 2008 WL 4927376 at 1. Specifically, Wise claimed that his former attorney "failed to meet the standard of care by exercising poor judgment when handling negotiations over the distribution of the marital estate or by failing to communicate with Wise about matters that were material to the dissolution litigation." *Id.* at 2. The trial court disagreed and, instead of granting Polis' motion for summary judgment, ordered Wise to

provide, within 30 days, full disclosure of Wise's expert witness evidence in the form of a report that included the expert's legal opinions and the material facts upon which the expert was relying without general references. *Id.* at 1, 4. When Wise failed to comply with the disclosure order, Polis then re-urged his summary judgment motion, which the court granted and dismissed the complaint. *Id.*

Affirming the granting of the attorney's summary judgment motion, the Arizona Court of Appeals agreed with the trial court and concluded that expert testimony was required regarding:

> 1. "at the very least to determine the pertinent standard of care for conceding well-established facts during negotiations. Whether Polis fell below the standard of care in entering into this agreement is not so apparent that a lay person could recognize negligence[,]" citing *Asphalt Eng'rs*, 160 Ariz. at 135-36, 770 P.2d at 1181-82;
>
> 2. "for dealing with the client's own damaging testimony[;]"
>
> 3. for "explain[ing] the factors that go into striking a judge for cause or peremptorily,[,]" citing Ariz.R.Civ.P. 42(f); and
>
> 4. explaining the parties' interests in property and division of multiple forms of assets; Arizona law regarding real property, personal property, business ventures, and bank accounts that had been acquired, owned or dissipated over varying time periods before and during the marriage; and how such laws and concepts apply to the attorney's alleged substandard practice.

*Id.* at 3-4. The appellate court's explanations why a standard-of-care expert in *Wise* is instructive.

**Discussion**

Here, Plaintiff certified "that expert opinion testimony is not necessary to prove the licensed professional's standard of care or liability for the professional liability claim in this case." (Docs. 21, ¶ 4 at 2; 1-1 at 15)  Plaintiff's Certification on Expert Testimony was filed with the Complaint on December 21, 2011, claiming "it is obvious under the facts of this case that Defendant's performance fell far below any reasonable standard of care that may be applied." (Doc. 1-1 at 15) Rather that seeking an order compelling Plaintiff to disclose preliminary expert opinion evidence, Defendants moved to dismiss this action, asserting "Plaintiff's Complaint at Law must be dismissed pursuant to A.R.S. § 12-2602(f) (sic)."

(Doc. 21, ¶ 6 at 3) Defendants fail, however, to explain or "identify . . . [t]he legal or factual basis for [their] contention that expert opinion testimony is required to establish the standard of care or liability for [Kaufman's] claim[,]" contrary to § 12-2602(D). Nevertheless, the Court agrees that this case requires standard-of-care testimony, but Defendants' request for dismissal is premature.

Kaufman's claims of negligence are not "so grossly apparent that a lay person would have no difficulty recognizing [them]." *Asphalt Eng'rs*, 160 Ariz. at 135-36, 770 P.2d at 1181-82. Much like explaining Arizona's laws regarding community property, separate property, contribution, co-mingling of assets, applicable presumptions and how they may be rebutted in a malpractice action against a divorce attorney, as *Wise* instructs, an expert witness in an action against a trial attorney must explain to the jury the rules of procedure and the possible consequences of, and risks associated with, failing to timely with discovery or other deadlines. For example, an attorney expert must explain, during a plaintiff's case-in-chief, the appropriate standard for disclosing a Rule 26.1 disclosure statement and the possible consequences of failing to timely provide one or not insisting that one be provided by an adverse party; the appropriate standard and consequences of failing to identify important exhibits and witnesses in a joint pretrial statement supportive of a client's claim; the appropriate standard and consequences of failing to offer in evidence unaltered exhibits at trial, and the appropriate standard and consequences of failing to submit proposed jury instructions, especially a special damage instruction on a novel issue of law, such as, whether a pet owner is entitled to recover value-to-owner damages for the wrongful death of a pet. Additionally, an attorney expert is required to explain at trial a client's options, including the right to request the entry of a default judgment or other sanctions under Rule 37(b)(2)(C), Ariz.R.Civ.P, if an adverse party wilfully fails to answer interrogatories, especially after that party has been ordered to do so;[8] and the considerations of the continued use of a high-priced veterinary expert, the risks associated with disclosing a different liability expert late in the

---

[8] *See Roberts v. City of Phoenix*, 225 Ariz. 112, 235 P.3d 265 (Az.Ct.App. 2010).

1  litigation, or not using one at all. The Court finds that Kaufman must use a standard-of-care

2  expert in this case in order to establish a *prima facie* case on Jesser's duty to Kaufman, any

3  breach of that duty and causation.

4  ### C. Statute of Limitations

5  Arizona Revised Statute § 12-542(1), (3) prescribe a two-year limitations period "[f]or

6  injuries done to the person of another including causes of action for . . . malpractice[,]" and

7  "[f]or trespass for injury done to . . . the property of another." *Kiley v. Jennings, Strouss &*

8  *Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (Ariz. Ct. App. 1996). "The determination

9  of when a cause of action accrues on a claim for legal malpractice is governed by the

10  discovery rule." *Commercial Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 254, 902 P.2d

11  1354, 1358 (Ariz. Ct. App. 1995). A statute of limitations, however, does not begin to run

12  until a plaintiff has actual or constructive knowledge that he has suffered an "actionable

13  wrong," defined as a "tort that results in appreciable non-speculative harm." *Manterola v.*

14  *Farmers Ins. Exch.*, 200 Ariz. 572, 576, 30 P.3d 639, 643 (Ariz. Ct. App. 2001) (citations

15  and internal quotations omitted). Usually, "[c]ommencement of the statute of limitations will

16  not be put off until one learns the full extent of his damages." *Commercial Union*, 183 Ariz.

17  at 255, 902 P.2d at 1359 (citations omitted). "Rather, the statute commences to run when the

18  plaintiff incurs some injury or damaging effect from the malpractice." *Id*. (citation omitted).

19  There are, however, exceptions when a statute of limitations begins to run.

20  When an attorney's misconduct occurs in the context of litigation, Arizona courts have

21  held that the resulting malpractice claim does not accrue until the appellate process has been

22  either fully exhausted or waived. *Mackenzie v. Leonard, Collins and Gillespie, P.C.*, 2010

23  WL 46789, * 3 (D. Ariz. January 4, 2010) (citing *Amfac Distrib. Corp. v. Miller*, 138 Ariz.

24  155, 154, 673 P.2d 795, 794 (Ariz. Ct. App. 1983) ("*Amfac I*") ("[I]n legal malpractice cases,

25  the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate

26  process is completed or is waived by a failure to appeal."), *approved as supplemented by*,

27  138 Ariz. 152, 673 P.2d 792 (Ariz. 1983) ("*Amfac II* "). In affirming *Amfac I*, the Arizona

28  Supreme Court held that a claim for legal malpractice "accrues when the plaintiff knew or

1    should reasonably have known of the malpractice and when the plaintiff's damages are

2    certain and not contingent upon the outcome of an appeal." *Amfac II*, 138 Ariz. at 153, 673

3    P.2d at 793 (internal quotation omitted). "In so holding, the court noted that an unsuccessful

4    party's damages are [not] certain, fixed, or irreversible upon entry of judgment by the trial

5    court because such damages may be considerably lessened or possibly eliminated if the

6    plaintiff is successful on appeal." *Id.*, 2010 WL 46789 at * 3 (citing *Amfac II*, 138 Ariz. at

7    154 n. 2, 673 P.2d at 794 n. 2) (internal quotation marks omitted). Because the "apparent

8    damage may vanish with successful prosecution of an appeal and ultimate vindication of the

9    attorney's conduct by an appellate court," and in order to "preserve the essential element of

10   trust in the attorney-client relationship," a cause of action for malpractice in the litigation

11   context does not accrue until judicial review is exhausted or waived. *Amfac II*, 138 Ariz. at

12   156, 159, 673 P.2d at 796, 799; *see also Glaze v. Larsen*, 207 Ariz. 26, 83 P.3d 26 (Ariz.

13   2004) (articulating the practical and policy rationale for the "errors-in-litigation" rule of

14   accrual).

15          Defendants argue that "Plaintiff knew or should have known of his cause of action on

16   or before July 10, 2008, when the trial court entered a final judgment in favor of

17   KAUFMAN." (Doc. 21 at 4) "Thus, since the Plaintiff in the instant matter was allegedly

18   'injured' by the July 10, 2008, (sic) judgment and on that date knew, or reasonably should

19   have known, of the alleged professional negligence, the statute of limitation in this matter

20   expired on July 10, 2010, and, therefore, the instant action was not timely filed." (*Id*. at 5)

21   The Court disagrees.

22          **Discussion**

23          Arizona law is clearly established that when an attorney's misconduct occurs in the

24   context of litigation, a resulting malpractice claim does not accrue until the appellate process

25   has been either fully exhausted or waived because the "injury or damaging effect on the

26   unsuccessful party is not ascertainable until the appellate process is completed or is waived

27   by a failure to appeal." *Cannon v. Hirsch Law Office, P.C.*, 222 Ariz. 171, 174, 213 P.3d 320,

28   323 (Ariz. Ct. App. 2009) (quoting *Amfac II*, 138 Ariz. at 154, 673 P.2d at 794); *see also*

*Keonjian v. Olcott*, 216 Ariz. 563, 556, 169 P.3d 927, 930 (Ariz. Ct. App. 2007); *Meenan v. March*, 2007 WL 5463488, * 3 (Ariz. Ct. App. December 4, 2007); *Glaze*, 207 Ariz. at 14, 83 P.3d at 29; *Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360; *Lansford v. Harris*, 174 Ariz. 413, 418, 850 P.2d 126, 131 (Ariz. Ct. App. 1992). The parties do not dispute that Kaufman's petition for review to the Arizona Supreme Court was denied on either May 20 or 21, 2010 in *Kaufman I*. (Docs. 25-1 at 1; 26 at 8)  Nineteen months later, Plaintiff filed the Complaint in *Kaufman II* on December 21, 2011. *Kaufman II* was timely filed and is not barred by Arizona's two-year statute of limitations.

**D. Causation**

"The general rule is that the question of causation is one of fact for a jury except in those instances where no reasonable persons could disagree." *Energex Enters., Inc. v. Shughart, Thomson & Kilroy, P.C.*, 2006 WL 2401245, * 3 (D. Ariz. August 17, 2006) (quoting *Molever v. Roush*, 152 Ariz. 367, 732 P.2d 1105, 1112 (Ariz. Ct. App. 1987) (internal quotation marks omitted). "Ordinarily, the question of proximate cause is a question of fact for the jury. Only when plaintiff's evidence does not establish a causal connection, leaving causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence, may the court properly enter a directed verdict." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (Ariz. 1990). Several Arizona courts have relied on the principle that the issue of causation in malpractice cases against lawyers is usually a jury question. In *Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 903 P.2d 621 (Ariz. Ct. App.1995), plaintiff claimed that her divorce attorneys' failure to secure a promissory note on all available assets prevented her from collecting on the note against her ex-husband's assets, which constituted malpractice. Defendants asserted that plaintiff's expert, an attorney, could only speculate that the trial court would have approved and signed the proposed judgment. Defendants argued that plaintiff's argument was speculative and insufficient, as a matter of law, to establish that plaintiff would have prevailed. Noting that "[t]he judge who handled the dissolution is the only one who could give a definitive answer on this issue, and his testimony is precluded as

1  a matter of public policy[,]" *Phillips*, 152 Ariz. 420, 733 P.2d at 305, the Arizona appellate

2  court held that the plaintiff presented sufficient evidence that the attorneys' omissions caused

3  plaintiff's harm and causation was a fact issue for the jury. *Reed*, 183 Ariz. at 318, 903 P.2d

4  at 626 ("The jury, as the trier of fact, has the duty to determine what a reasonable judge

5  would have done.").

6       In *Tennen v. Lane*, 149 Ariz. 94, 97, 716 P.2d 1031, 1034 (Ariz. Ct. App. 1986),

7  another malpractice action against an attorney, the Arizona appellate court reversed a

8  directed verdict in favor of the attorney, finding that a question of fact for jury resolution

9  existed whether the attorney's actions were "a proximate cause of damage to the [plaintiff],"

10  regardless of the potentially more culpable actions by the ex-husband. "The question of

11  proximate cause is usually for the jury and it is only when reasonable persons could not differ

12  that the court may direct a verdict on the issue[,]" citing *Markowitz v. Arizona Parks Board*

13  *and State of Arizona*, 146 Ariz. 352, 358, 706 P.2d 364, 370 (Ariz. 1985); *see also McClure*

14  *Enters., Inc. v. General Ins. Co. of Am.*, 2009 WL 73677, * 17 (D. Ariz. January 9, 2009) (in

15  a legal malpractice case, the trial court found the causation question was one of fact for the

16  jury).

17       Defendants claim that because Kaufman asked Jesser to step aside and allow attorney

18  Blake Gunn to finish the trial,"[i]t will be impossible to prove the necessary element of

19  proximately caused damages. Any assertions about how the underlying trial would have

20  concluded if JESSER would have been allowed to complete the trial are pure speculation."

21  (Doc. 21, ¶ 13 at 5) The Court rejects this argument.

22       **Discussion**

23       Because the Court must accept all "well-pleaded factual allegations in the complaint

24  as true," *Iqbal*, 556 U.S. at 678, the Complaint's causation allegations are sufficiently

25  specific to show Kauffman's right to relief is plausible and "above the speculative level."

26  *Twombly*, 550 U.S. at 555. Defendant's arguments that the Complaint should be dismissed

27  on the issue of causation are rejected.

28  / / /

### E. Damages

"In Arizona, '[a]s a general rule, a plaintiff in a tort action is entitled to recover such sums as will reasonably compensate him for all damages sustained by him as the direct, natural and proximate result of [the defendant's] negligence, provided they are established with reasonable certainty.'" *Nunsuch ex rel. Nunsuch v. U.S.*, 221 F.Supp.2d 1027, 1034 (D. Ariz. 2001) (quoting *Continental Life & Accident Co. v. Songer*, 124 Ariz. 294, 304, 603 P.2d 921, 931 (Ariz. Ct. App. 1979). "It is well established that certainty in amount of damages is not essential to recovery when *the fact* of damage is proven." *Surowiec v. Capital Title Agency, Inc*., 790 F.Supp.2d 997, 1001-02 (D. Ariz. 2011) (quoting *Gilmore v. Cohen*, 95 Ariz. 34, 386 P.2d 81, 82 (Ariz. 1963) (internal quotation marks and citations omitted; emphasis in original). This rule is "simply a recognition that doubts as to the extent of injury should be resolved in favor of the innocent plaintiff and against the wrongdoer." *Id*. at 1002. "The plaintiff in every case, however, should supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the available evidence, is possible." *Id*. (internal quotation marks omitted).

The Complaint alleges that Kaufman sustained various monetary damages as a result of Jesser's alleged negligence: (a) the failure to recover amounts paid for veterinary bills, (b) the value Kaufman placed on Salty, (c) the costs incurred in *Kaufman I*, (d) the payment of defendant's costs, (e) the payment of an attorney to appeal the adverse decisions caused by Jesser's alleged negligence, (f) the payment of Dr. Vaughn's excessive expert's fees, and (g) the payment of Jesser's attorney's fees over $120,000.00 for substandard representation. (Doc. 1-1, ¶¶ 48-49 at 13-14)

Defendants argue that "Plaintiff cannot state what additional damages he would have been entitled to. It appears that the Plaintiff is attempting to find another way to recover his sentimental damages, but the majority [of] those states that apply the value-to-owner measure of damages for an injured or killed animal do not include the pet's sentimental value to its owner as a part of that calculation." (Doc. 21, ¶ 14 at 6)

/ / /

**Discussion**

Again, because the Court must accept all "well-pleaded factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, , the Court will assume the damage allegations can be proven at trial. Construing the evidence in the light most favorable to Plaintiff, a jury could reasonably conclude that Plaintiff has suffered more than $75,000 in compensatory damages as a result of Jesser's alleged professional negligence. The Court rejects Defendants' argument that the Complaint should be dismissed on the basis of Plaintiff cannot prove his damage allegations.

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted, docs. 20-21, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff must provide a preliminary expert opinion affidavit to Defendants, consistent with A.R.S. § 12-2602(B), on or before **Wednesday, August 22, 2012**. Plaintiff's preliminary expert opinion affidavit must disclose, at a minimum, the following: 1) the expert's qualifications to express an opinion on the licensed professional's standard of care or liability for the claim; 2) the factual basis for each claim against Jesser; 3) Jesser's professional acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability; and, 4) the manner in which Jesser's professional acts, errors or omissions allegedly caused or contributed to Kaufman's damages. A.R.S. § 12-2602(B). Plaintiff's expert affidavit regarding Jesser's alleged substandard conduct and the factual basis upon which the expert relies must be specific in nature, not merely generalities.

The Court stays this action pending Plaintiff's filing a notice of compliance with this Order on or before **Wednesday, August 22, 2012**. Absent a showing of good cause, the failure to timely comply with A.R.S. § 12-2602(B) and this Order may result in sanctions,

/ / /

/ / /

/ / /

1    including but not limited to, the dismissal of this action or the preclusion of Plaintiff's

2    standard-of-care expert in this lawsuit.

3         **IT IS FURTHER ORDERED** that, because the briefing is adequate and oral

4    argument would not aid the Court, Defendants' request for oral argument is **DENIED**.

5         Dated this 18th day of July, 2012.

6

7

8                                        Lawrence O. Anderson
                                         United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28